**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, RARE BREED TRIGGERS, INC., and RBTM LLC, a Wyoming limited liability company,<br>Plaintiffs,<br>v.<br>REDACTED ARMS LLC,<br>Defendant. | Civil Action No. 4:26-cv-00754-ALM<br>JURY TRIAL DEMANDED |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT**

This is an action for patent infringement, trademark infringement, and unfair competition in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse Redacted Arms LLC ("Redacted Arms" or "Defendant") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition, as follows:

## I. PLAINTIFFS

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. RBTM is a Plaintiff only on the trademark counts.

## II. DEFENDANTS

4. Upon information and belief, Redacted Arms LLC is a limited liability company organized under the laws of Pennsylvania with an address of 17 South Commerce Way #20610, Lehigh Valley, Pennsylvania 18002.

## III. JURISDICTION

5. This Court has subject-matter jurisdiction over the patent claims under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has subject-matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the related common-law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

7. Plaintiffs filed this action in the United States District Court for the Eastern District of Pennsylvania ("the Transferor Court"), No. 5:26-cv-03669, and the Judicial Panel on Multidistrict Litigation transferred it to this Court under 28 U.S.C. § 1407 for coordinated pretrial proceedings. Personal jurisdiction and venue are therefore pleaded as to the transferor court.

8. Personal jurisdiction over Defendant is proper in the Transferor Court because Defendant resides in and has a regular and established place of business in that District. Defendant has admitted the allegations of this paragraph as pleaded in the Transferor Court. Dkt. 15 ¶ 6.

9. Venue is proper in the Transferor Court pursuant to 28 U.S.C. § 1400(b). Defendant resides in or has committed acts of infringement and has a regular and established

place of business in that District. Defendant has admitted the allegations of this paragraph as pleaded in the Transferor Court. Dkt. 15 ¶ 7.

## IV. THE PATENTS-IN-SUIT

10. Plaintiffs assert the patents listed below (the "Patents-in-Suit"). Each is referred to by the last three digits of its number (for example, U.S. Patent No. 12,038,247 is the "'247 patent"). A copy of each is attached as the exhibit shown.

| Ex. | Patent | U.S. Patent No. | Title | Issued |
|---|---|---|---|---|
| A | '247 | 12,038,247 | Firearm Trigger Mechanism | July 16, 2024 |
| B | '784 | 12,031,784 | Adapted Forced Reset Trigger | July 9, 2024 |
| C | '538 | 12,529,538 | Safety Mechanism for Firearm | Jan. 20, 2026 |
| D | '159 | 12,578,159 | Firearm Trigger Mechanism | Mar. 17, 2026 |
| E | '403 | 12,636,403 | Firearm Trigger Mechanism | May 26, 2026 |

11. Each Patent-in-Suit was duly and legally issued by the United States Patent and Trademark Office and is presumed valid. 35 U.S.C. § 282.

### Ownership and license

12. ABC owns all right, title, and interest in and to the Patents-in-Suit. ABC holds them by assignment recorded at the United States Patent and Trademark Office, or as the original applicant, as shown below:

| Patent | U.S. Patent No. | Title | Assignment Reel/Frame |
|---|---|---|---|
| '247 | 12,038,247 | Firearm Trigger Mechanism | 63791/0546 |
| '784 | 12,031,784 | Adapted Forced Reset Trigger | 61657/0550 |
| '538 | 12,529,538 | Safety Mechanism for Firearm | 72845/0001 |
| '159 | 12,578,159 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |
| '403 | 12,636,403 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |

13. Rare Breed is the exclusive licensee of the Patents-in-Suit.

## Marking

14. Rare Breed sells various products that practice the Patents-in-Suit, including the following:

| RBT Product | Platform | Patent(s) |
|---|---|---|
| FRT-15L3® | AR-15 | ’403 |
| FRT-15L3® (Flat) | AR-15 | ’403 |
| FRT-15L3® (MIL) | AR-15 | ’403 |
| FRT-15C3® | AR-15 | ’247, ’159, ’403 |
| FRT-15C3® (Flat) | AR-15 | ’247, ’159, ’403 |
| FRT-MR3™ | AR-15 (piston-driven) | ’403 |
| FRT-MR3™ (Flat) | AR-15 (piston-driven) | ’403 |
| FRT-MR3™ (MIL) | AR-15 (piston-driven) | ’403 |
| FRT-RD3™ (SEF) | HK MP5/SP5 | ’403 |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | ’403 |
| FRT-AP3™ | B&T APC9/APC40 | ’247, ’159, ’403 |
| FRT-SG3™ | B&T SPC9/SPC45/GHM9/GHM45 | ’247, ’159, ’403 |
| FRT-22® | Ruger® 10/22® | ’403 |

15. Each of the above products is physically marked with the following: “PATENTS: RBTPATENTS.COM.”

16. RBTPatents.com routes consumers to Rare Breed’s website, https://rarebreedtriggers.com/patents, which informs consumers that Rare Breed’s products are protected in the United States by one or more patents owned by ABC IP, LLC. The website identifies which patents are practiced by each of Rare Breed’s products.

17. Accordingly, to the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the Patents-in-Suit.

## V. FORCED RESET TRIGGER TECHNOLOGY

18. A typical AR-15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from

the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector, and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

19. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

20. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt mechanically moves the trigger member to the reset position and holds it there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

## VI. THE PATENTED INVENTIONS

21. The '247 and '159 patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other

prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

22. The '784 patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semiautomatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 patent overcome the geometric limitations of prior art designs for use in multiple and varied semiautomatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

23. The '538 patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

24. The '403 patent describes and claims a device that can be selected to operate in either of two distinct modes: (1) standard disconnector semiautomatic mode and (2) "forced reset" semiautomatic mode.

25. The claims of the Patents-in-Suit define the scope of the patented inventions.

## VII. THE ACCUSED PRODUCT FAMILIES

26. The accused products fall into one product family. A family is defined by the design and operation of its fire-control mechanism, not by its maker or seller. Products in a family operate the same way in the respects the asserted claims address, whether sold as a complete unit, a kit, a part, or installed in a lower receiver. Differences among the products in a family, such as branding, labeling, color, finish, material, method of manufacture, packaging, an ambidextrous selector, or an external housing, do not affect any element of the asserted claims. In this Complaint, the "user" is the person operating a firearm in which a family product is installed.

27. On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Patents-in-Suit, including the Super Safety described below (the "Accused Products").

| Family | What it is | Patents asserted | Charts |
|---|---|---|---|
| Super Safety | Three-position cam safety selector, sold as a partial or complete kit, with other firearm parts, or installed. | '247, '784, '538, '159, '403 | K-1 to K-5 |

### The Super Safety family

28. The Super Safety family includes the (3-Position) "Super Safety" and every product of the same design and operation, whatever its maker or name. A Super Safety uses a specially made cam and cam lever that replace a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam.

29. On information and belief, Defendant is making, using, selling, and/or offering for sale Super Safety family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed

in combination with a standard AR-pattern hammer, disconnector, springs, and a modified trigger, infringes the claims of the ’247, ’784, ’538, ’159, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., modified triggers or trigger cutting jigs).

30. On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) “Super Safety,” which embodies the technology claimed in at least the ’247, ’784, ’538, ’159, and ’403 patents, through its website, https://redactedarmsllc.com/product-category/ar-15-platform/. Exemplary photographs from Redacted Arms’ website are shown below:


HOME
SHOP
INSTALLATION GUIDES
ABOUT US
HOME / AR-15 PLATFORM
AR-15 PLATFORM
This category features AR 15 platform parts designed to support reliable performance, proper fitment, and controlled trigger function. Redacted Arms offers Super Safety solutions and related components built to integrate with standard AR 15 specifications, whether you are upgrading an existing rifle or refining a new build.
Browse Super Safety kits for the AR 15 platform, trigger-related upgrades, and supporting parts engineered for consistent operation and long-term use. These products are intended for users who value precision machining, dependable performance, and straightforward installation.
WHAT KIT DO I NEED?
If you have the standard trigger (milspec) that comes factory with almost all firearms, all you will need is "Super Safety with Cut Trigger". If your Ar has a performance/drop-in trigger, you will need "Super Safety with Cut Trigger and FCG." This product can be found by either clicking the product by that name or picking the "Super Safety with Cut Trigger" and clicking the drop-down selection and clicking "Add remainder of FCG."
If you are still unsure of what product to purchase, please give us a call or send us an email, and we can walk you through it! Monday-Friday 9-5 EST.
Sort by popularity
SUPER SAFETY WITH CUT TRIGGER
$149.99
ADD TO CART
SUPER SAFETY WITH STRAIGHT TRIGGER
$159.99
ADD TO CART
SUPER SAFETY WITH TRIGGER AND H3 BUFFER
$224.99
ADD TO CART
SUPER SAFETY WITH FCG
$184.99
ADD TO CART
SUPER SAFETY FCG AND H3 KIT
$259.99
ADD TO CART
DIY SUPER SAFETY
$119.99
ADD TO CART




SUPER SAFETY WITH CUT TRIGGER

$149.99

ADD TO CART




SUPER SAFETY FCG AND H3 KIT

$259.99

ADD TO CART

31. A Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

32. Plaintiffs assert the '247, '784, '538, '159, and '403 patents against the Super Safety family.

**Claim charts**

33. The claim charts listed below, attached as the exhibits shown, compare a representative claim of each Patent-in-Suit to each family against which it is asserted. Each chart shows how a family product meets each limitation when assembled and used as intended.

| Ex. | Family | Patent | Claim |
|---|---|---|---|
| K-1 | Super Safety | '247 | 15 |
| K-2 | Super Safety | '784 | 1 |
| K-3 | Super Safety | '538 | 1 |
| K-4 | Super Safety | '159 | 1 |
| K-5 | Super Safety | '403 | 38 |

**Asserted claims**

34. Plaintiffs assert the claims listed below.

| Asserted Patent | Accused Product Family | Asserted Claims |
|---|---|---|
| '247 Patent | Super Safety Family | 15, 17–20, 23 |
| '784 Patent | Super Safety Family | 1, 3, 4 |
| '538 Patent | Super Safety Family | 1–13 |
| '159 Patent | Super Safety Family | 1, 3–17 |
| '403 Patent | Super Safety Family | 14–29, 32, 35–39, 53 |

## VIII. INFRINGEMENT THEORIES

35. **Direct infringement.** A Defendant that, without authority, makes, uses, sells, offers to sell, or imports into the United States a family product directly infringes the asserted

claims of a Patent-in-Suit asserted against that family, literally or under the doctrine of equivalents. 35 U.S.C. § 271(a).

36. **Assembled use.** Many family products are sold as kits or parts that the buyer installs in an AR-15-pattern lower receiver. When assembled and used as intended, as the seller's instructions direct, the resulting fire-control mechanism practices asserted claims, as the claim charts show. A Defendant that assembles, installs, tests, or demonstrates family products, including by installing them in its customers' firearms, itself makes and uses the claimed inventions and directly infringes. 35 U.S.C. § 271(a).

37. **Induced infringement**. A Defendant that knows of a Patent-in-Suit and, intending that customers infringe it, provides instructions, installation guides, videos, compatibility statements, or marketing that leads customers to assemble and use family products as claimed, induces infringement. 35 U.S.C. § 271(b).

38. **Contributory infringement.** A Defendant that sells, offers to sell, or imports a component of a family product, such as a cam, reset or transfer lever, lever arm, selector, or cassette or housing assembly, or a family product sold as a kit for assembly, contributes to infringement of a Patent-in-Suit when the component constitutes a material part of the invention and the Defendant knows it to be especially made or especially adapted for use in an infringement of that patent. 35 U.S.C. § 271(c). These components are not staple articles or commodities of commerce suitable for substantial noninfringing use: they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the Patents-in-Suit.

**Defendant's inducing and contributing acts**

39. On information and belief, in addition to its direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the Patents-in-Suit,

knowing that those steps will induce, encourage, and facilitate direct infringement by others. Those steps include installation of, encouraging, advertising, promoting, and instructing others to use, and how to use, the Super Safety.

40. For example, Defendant's website contains promotional material at https://redactedarmsllc.com/ar15-installation/ that tells customers to install the Super Safety into an AR-15 and instructs them how to do so, including an installation video titled "How to install a Super Safety in an Ar," as shown below:






41. On information and belief, Defendant knows or should know that these activities induce others to directly infringe the Patents-in-Suit, including at least claim 15 of the ’247 patent, claim 1 of the ’784 patent, claim 1 of the ’538 patent, claim 1 of the ’159 patent, and claim 38 of the ’403 patent.

42. On information and belief, Defendant also contributes to the infringement of the Patents-in-Suit by others, including its customers, by selling, offering for sale, and/or importing components of the Super Safety, such as the cam or cam lever arm. Those components are not suitable for substantial noninfringing use because they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the Patents-in-Suit.

## IX. NOTICE, KNOWLEDGE, AND WILLFULNESS

43. On information and belief, Defendant has known of each Patent-in-Suit, and that Plaintiffs accuse the Super Safety of infringing it, at least since service of the first complaint asserting that patent against it, *ABC IP, LLC et al. v. Redacted Arms LLC*, No. 5:26-cv-03669 (E.D. Pa. filed May 28, 2026).

44. On information and belief, Defendant has continued to make, use, sell, offer for sale, and/or import the Super Safety since learning of the Patents-in-Suit, and has been aware of Rare Breed's forced reset trigger products, as its own website discusses the Rare Breed FRT-15 and Rare Breed's settlement with the Department of Justice.

45. A Defendant that, after learning of a Patent-in-Suit and how its products are accused of infringing it, continues to make, sell, or promote those products infringes willfully. Plaintiffs seek enhanced damages under 35 U.S.C. § 284 against that Defendant.

46. Plaintiffs' damages run from the earlier of the date Plaintiffs' marking began under 35 U.S.C. § 287(a), *see* ¶¶ 14–17, and the date of actual notice to the Defendant, including notice by the filing of suit.

## X. THE FRT® MARKS

47. RBTM owns the FRT® trademark and its variations, the registrations and applications listed below, and the common-law rights in those marks (together, the "FRT® marks"). ABC assigned the registrations and applications, with their goodwill, to RBTM by an assignment executed May 26, 2026, and submitted to the United States Patent and Trademark Office for recording on June 11, 2026 (Assignment IDs 1867613 and 1867473). Rare Breed is the exclusive licensee of the FRT® marks, with the right to enforce them.

48. The following FRT® marks are registered with the United States Patent and Trademark Office for triggers for firearms (the "Registered FRT® Marks"):

| Mark | Reg. No. | Registered | Serial No. | Assignment to RBTM LLC |
|---|---|---|---|---|
| FRT® | 8,187,914 | Mar. 24, 2026 | 97248519 | Reel: 009301, Frame: 0033 |
| FRT-15® | 7,004,418 | Mar. 21, 2023 | 97245949 | Reel: 009301, Frame: 0033 |
| FRT-22® | 8,232,406 | Apr. 28, 2026 | 97248530 | Reel: 009301, Frame: 0033 |
| FRT-47® | 8,232,405 | Apr. 28, 2026 | 97248528 | Reel: 009301, Frame: 0033 |
| FRT-15L3® | 8,225,451 | Apr. 21, 2026 | 98715335 | Reel: 009301, Frame: 0033 |
| FRT-15C3® | 8,369,662 | July 28, 2026 | 98715353 | Reel: 009300, Frame: 0614 |

49. RBTM also owns the following applications to register marks for triggers for firearms:

| Mark | Serial No. | Status | Assignment to RBTM LLC |
|---|---|---|---|
| FRT-MR3™ | 99714625 | Pending | Reel: 009300, Frame: 0614 |
| FRT-RD3™ | 99714703 | Pending | Reel: 009300, Frame: 0614 |

50. Since at least 2020, the FRT® mark has been used by Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT® mark has come to be uniquely identified with Rare Breed and is a valuable identifier of Rare Breed's products.

51. The FRT® marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT® marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

52. The reputation Plaintiffs have built in the FRT® marks is of great value to Plaintiffs.

53. A product that does not originate with Plaintiffs is not a Rare Breed FRT® product, whatever its seller calls it. A seller's unauthorized use of the FRT® marks to identify and promote its products is likely to mislead consumers into believing that the seller's products are Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

54. Redacted Arms is advertising its products as an "FRT." For example, Redacted Arms' website, https://redactedarmsllc.com, includes a page titled "Best FRTS Compared: Super Safety vs. Disruptor vs. Atrius vs. Kabuto" at https://redactedarmsllc.com/best-frt-comparison/, on which Redacted Arms states that "The best FRT is the one that fits your platform, your trigger and your budget once every required part is counted. If you want one system that works across AR-15, AK, MP5 and AR-9 builds, start with the Redacted Arms Super Safety with cut trigger." Redacted Arms also describes its products as "FRT trigger groups" at https://redactedarmsllc.com/what-is-an-frt-trigger/. Exemplary images are shown below:




*The best FRT depends on type: trigger replacements like the Rare Breed FRT-15L3 ($450) and Partisan Disruptor ($299.99–324.99), selector-based devices like the Redacted Arms Super Safety ($119.99–249.99) and Atrius FRS ($179.99–249), and drop-in reset devices like the Kabuto (about $120). Nearly all need an M16-profile BCG and an H2 or H3 buffer.*

### WHICH PLATFORMS USE FORCED RESET SYSTEMS?

The AR-15 is where forced reset triggers started and where most of them still go, because the mil-spec fire control group has a predictable layout to design around. Reset systems for other platforms followed:

- **AR-15 and AR-9:** drop-in FRT trigger groups, plus selector-based reset systems such as the AR-15 super safety trigger.
- **AK:** reset systems have to work around the AK's trip bar and its very different fire control layout, which is why the AK Super Safety uses a 3-position selector instead of a drop-in trigger.
- **MP5 / roller-delayed:** builders run reset systems in AR-compatible lowers, like our MP5 super safety lowers.
- **Rimfire pistols:** the Taurus TX22 has its own active reset part, the TX22 ART, built around the pistol's internal trigger layout.

55. Despite Redacted Arms' marketing, Redacted Arms' products are not one of Plaintiffs' FRT products.

56. Redacted Arms' unauthorized use of the FRT® marks to identify and promote its products is likely to mislead consumers into falsely believing that Redacted Arms' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

57. The only reason Redacted Arms would use the FRT® marks in connection with its products is to trade on the goodwill Plaintiffs have developed in the FRT® marks, and thus Redacted Arms' conduct is willful.

## XI. CLAIMS FOR RELIEF

### COUNT I: INFRINGEMENT OF THE '247 PATENT (U.S. PATENT NO. 12,038,247)

58. Plaintiffs incorporate the paragraphs of §§ I–IX.

59. Defendant has infringed and continues to infringe at least claim 15 of the '247 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

60. Defendant has also induced infringement of the '247 patent in violation of 35 U.S.C. § 271(b).

61. Defendant has contributed to infringement of the ’247 patent in violation of 35 U.S.C. § 271(c).

62. Defendant’s infringement of the ’247 patent has been willful.

63. Defendant’s infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

64. Defendant’s infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT II: INFRINGEMENT OF THE ’784 PATENT (U.S. PATENT NO. 12,031,784)**

65. Plaintiffs incorporate the paragraphs of §§ I–IX.

66. Defendant has infringed and continues to infringe at least claim 1 of the ’784 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

67. Defendant has also induced infringement of the ’784 patent in violation of 35 U.S.C. § 271(b).

68. Defendant has contributed to infringement of the ’784 patent in violation of 35 U.S.C. § 271(c).

69. Defendant’s infringement of the ’784 patent has been willful.

70. Defendant’s infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

71. Defendant’s infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT III: INFRINGEMENT OF THE ’538 PATENT (U.S. PATENT NO. 12,529,538)**

72. Plaintiffs incorporate the paragraphs of §§ I–IX.

73. Defendant has infringed and continues to infringe at least claim 1 of the ’538 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

74. Defendant has also induced infringement of the ’538 patent in violation of 35 U.S.C. § 271(b).

75. Defendant has contributed to infringement of the ’538 patent in violation of 35 U.S.C. § 271(c).

76. Defendant’s infringement of the ’538 patent has been willful.

77. Defendant’s infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

78. Defendant’s infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT IV: INFRINGEMENT OF THE ’159 PATENT (U.S. PATENT NO. 12,578,159)**

79. Plaintiffs incorporate the paragraphs of §§ I–IX.

80. Defendant has infringed and continues to infringe at least claim 1 of the ’159 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

81. Defendant has also induced infringement of the ’159 patent in violation of 35 U.S.C. § 271(b).

82. Defendant has contributed to infringement of the ’159 patent in violation of 35 U.S.C. § 271(c).

83. Defendant’s infringement of the ’159 patent has been willful.

84. Defendant’s infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

85. Defendant’s infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT V: INFRINGEMENT OF THE ’403 PATENT (U.S. PATENT NO. 12,636,403)**

86. Plaintiffs incorporate the paragraphs of §§ I–IX.

87. Defendant has infringed and continues to infringe at least claim 38 of the ’403 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

88. Defendant has also induced infringement of the ’403 patent in violation of 35 U.S.C. § 271(b).

89. Defendant has contributed to infringement of the ’403 patent in violation of 35 U.S.C. § 271(c).

90. Defendant’s infringement of the ’403 patent has been willful.

91. Defendant’s infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

92. Defendant’s infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

## COUNT VI: TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

93. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

94. As described above, RBTM is the owner and Rare Breed is the exclusive licensee of the Registered FRT® Marks in connection with firearm triggers.

95. The federal trademark registrations for the Registered FRT® Marks are in full force and effect. RBTM owns all right, title, and interest in and to these registrations.

96. Plaintiffs' use of and rights in the Registered FRT® Marks predate any use by Redacted Arms.

97. Redacted Arms is wrongfully using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

98. Redacted Arms' use of the Registered FRT® Marks was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Redacted Arms' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

99. Redacted Arms' unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

100. Redacted Arms' unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

101. Plaintiffs are entitled to injunctive relief prohibiting Redacted Arms from using the Registered FRT® Marks and any mark confusingly similar to them.

102. On information and belief, Redacted Arms has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VII: FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))**

103. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

104. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous and substantially exclusive use of the FRT® marks since at least as early as 2020, which is well before any use of "FRT" by Redacted Arms.

105. Plaintiffs' common-law rights in the FRT® marks predate Redacted Arms' infringing use of "FRT" and any other confusingly similar name or mark comprised of or containing "FRT."

106. Redacted Arms is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

107. Redacted Arms' actions constitute use of a false designation of origin that wrongfully and falsely designates the origin of Redacted Arms' goods and is likely to cause confusion or mistake, or to deceive, as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of Redacted Arms' goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

108. Redacted Arms' unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

109. Redacted Arms' unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

110. Plaintiffs are entitled to injunctive relief prohibiting Redacted Arms from using the FRT® marks or any other mark confusingly similar to the FRT® marks.

111. On information and belief, Redacted Arms has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VIII: COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

112. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

113. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous use of the marks since at least as early as 2020, before any use of "FRT" by Redacted Arms.

114. Plaintiffs' common-law rights in the FRT® marks predate Redacted Arms' infringing use of "FRT" and any other confusingly similar mark comprised of or containing "FRT."

115. Redacted Arms is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

116. Redacted Arms' use of "FRT" was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or

affiliation of Redacted Arms' goods. Redacted Arms' acts constitute trademark infringement and unfair competition under common law.

117. Redacted Arms' unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

118. Redacted Arms' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which they have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

119. Plaintiffs are entitled to injunctive relief prohibiting Redacted Arms from using "FRT" or any other mark confusingly similar to the FRT® marks.

120. On information and belief, Redacted Arms has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

(a) a judgment that Defendant has infringed each asserted Patent-in-Suit;

(b) damages adequate to compensate for the infringement, in no event less than a reasonable royalty, with pre- and post-judgment interest and costs (35 U.S.C. § 284);

(c) enhanced damages for willful infringement (35 U.S.C. § 284);

(d) a preliminary and permanent injunction against further infringement of any unexpired Patent-in-Suit (35 U.S.C. § 283);

(e) a finding that the case is exceptional and an award of reasonable attorneys' fees (35 U.S.C. § 285);

(f) on the trademark counts, an injunction (15 U.S.C. § 1116);

(g) on the trademark counts, Defendant's profits, Plaintiffs' damages, and costs (15 U.S.C. § 1117(a));

(h) on the trademark counts, enhanced damages and attorneys' fees where the law allows (15 U.S.C. § 1117(a)); and

(i) any other relief the Court finds just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38.

DATED: November 18, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
CA Bar No. 310972
FISH & RICHARDSON P.C.

12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted pro hac vice)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

***Attorneys for Plaintiffs ABC IP, LLC, Rare Breed Triggers, Inc., and RBTM LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on November 18, 2026, on all counsel of record who are deemed to have consented to electronic service through the Court's CM/ECF system.

*/s/ Matthew A. Colvin*
Matthew A. Colvin